UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

BARBER SURGEONS GUILD PC et al.,

        Petitioners,

    -v-                                    No.  25-CV-2537-LTS

LOUIS MARIOTTI et al.,

        Respondents.

----------------------------------------------------------x

## MEMORANDUM ORDER

Petitioners Barber Surgeons Guild PC and Barber Surgeons, Inc. (collectively, "Petitioners") request that the Court vacate an arbitration award rendered in a proceeding brought against Louis Mariotti, Roy Stoller, Louis J. Mariotti, DO, PLLC, and R. Stoller, DO, PLLC (collectively, "Respondents") under sections 10(a)(3) and (4) of the Federal Arbitration Act ("FAA").  Respondents counterclaim for confirmation of the arbitration award.  The award addresses claims of misappropriation of trade secrets, breach of contract, and defamation asserted by Petitioners and their affiliate Justin Edward Rome MD PC, which apparently did business as Barber Surgeons Guild New York.[1]

Pending before the Court are various motions and a proposed stipulation, including:

- Petitioners' motion to seal certain materials (docket entry no. 24 ("Motion to Seal" or "Mot. Seal"));

---

[1]     The parties refer to Justin Rome and the New York entity Justin Edward Rome MD PC together as "BSG NY," and the Court does likewise in this Memorandum Order.  BSG NY is not a party to this action.

BSG – RULE 19                      MARCH 25, 2026                    1

- Respondents' motion to dismiss Petitioners' initial Petition (docket entry no. 1 ("Initial Petition")) for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure (docket entry no. 28 ("First Motion to Dismiss" or "First MTD"));[2]
- Respondents' motion to dismiss the Amended Petition (docket entry no. 31 ("Amended Petition" or "Am. Pet.")) under Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join an indispensable party under Rule 19 (docket entry no. 36 ("Second Motion to Dismiss" or "Second MTD"));
- a proposed stipulation (docket entry no. 38 ("Stipulation")) purporting to resolve the Second MTD by approving the joinder of BSG NY as a party to what Respondents characterize as their compulsory counterclaim for confirmation of the arbitration award, as pleaded in their Answer to the operative amended Petition (docket entry no. 41 ("Answer"));
- Petitioners' letter motion seeking to amend the case caption (docket entry no. 49 ("Letter Motion"));
- Petitioners' motion to vacate the arbitration award (docket entry no. 16 ("Motion to Vacate" or "Vacate Mot.")); and
- Respondents' motion to confirm the arbitration award (docket entry no. 46 ("Motion to Confirm")).

For the reasons that follow, the Motion to Seal is granted.  The Court, however, declines to "So Order" the Stipulation and denies the Letter Motion.  The Court further concludes that this case must be dismissed for failure to name an indispensable party under Rule 19 of the Federal Rules of Civil Procedure[3] and accordingly terminates all other pending motions as moot.

## I.   BACKGROUND

The following facts are drawn from the parties' papers and the underlying Arbitration Award (docket entry no. 36-2 ("Arbitration Award")) and are not in dispute unless otherwise noted.  BSG NY and Petitioner Barber Surgeons Guild PC are hair restoration clinics that are headquartered in New York and California, respectively, and both are managed by

---

[2]   The First Motion to Dismiss was rendered moot by the filing of the Amended Petition (docket entry no. 31) and is accordingly denied.

[3]   Hereinafter, references to any numbered Rule refer to the corresponding numbered provision of the Federal Rules of Civil Procedure.

Petitioner Barber Surgeons, Inc., which is also headquartered in California.  (Initial Pet. ¶ 1.) Respondents Louis Mariotti ("Mr. Mariotti") and Roy Stoller ("Mr. Stoller") are physicians who respectively own and operate their medical practices through Respondents Louis J. Mariotti, DO, PLLC and R. Stoller, DO, PLLC.  (Id. ¶ 2.)

This suit concerns an arbitration award rendered in a proceeding related to arbitration provisions of contracts entered into between BSG NY and Mr. Mariotti in 2021 (see docket entry no. 36-3 ("Mariotti Agreement")) and between BSG NY and Mr. Stoller in 2022 (see docket entry no. 36-4 ("Stoller Agreement")).  Under those contracts, BSG NY retained Mr. Mariotti and Mr. Stoller to provide hair restoration services in its New York office.  Those contracts provided, among other things, that "[a]ny dispute arising out of or relating to this Agreement or the subject matter thereof . . . will be resolved by arbitration."  (Mariotti Agreement ¶ 14; Stoller Agreement ¶ 14.)  It is undisputed that BSG NY was the only other signatory to each agreement and was the only entity with which Respondents contracted and worked.

According to Petitioners, after Mariotti left his employment with BSG NY in 2023, Mr. Stoller accessed the files of thousands of patients and transferred them to Mr. Mariotti, who then solicited the patients via text messages.  (Am. Pet. ¶ 5.)  In response to these actions, and in light of the arbitration clauses contained in the Agreements, BSG NY and Petitioners initiated arbitration proceedings against Respondents, alleging trade secret violations under California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426, and the federal Defend Trade Secrets Act, 18 U.S.C. § 1836.  (Id. ¶ 6.)  On February 7, 2025, an arbitrator from the American Health Lawyers Association issued an Arbitration Award that rejected all of the parties' claims and counterclaims and declined to award any relief.  (Arbitration Award at 10-11.)  On March

27, 2025, Petitioners and BSG NY jointly filed the Initial Petition in this proceeding, which sought vacatur of the Arbitration Award.  In particular, they argued that the arbitrator exceeded her authority and acted in violation of fundamental fairness when she concluded that "sharing patient information was reasonably within the scope of [the physicians'] professional relationship."  (Initial Pet. ¶ 8-9.)

The Initial Petition asserted that the Court had federal question jurisdiction of this action under 28 U.S.C. section 1331 based on the underlying Defend Trade Secrets Act claims that the arbitrator had decided.  (Id. ¶ 10.)  Respondents moved to dismiss the Initial Petition for lack of subject matter jurisdiction, arguing that Supreme Court precedent squarely foreclosed the asserted jurisdictional ground.  (First MTD at 1 (citing Badgerow v. Walters, 596 U.S. 1, 5 (2022) (holding that a "'look-through' approach to jurisdiction" does not apply to requests to vacate arbitral awards)).)  In response, Petitioners filed an Amended Petition that was largely identical to the Initial Petition, except that it dropped BSG NY as a Petitioner and asserted that the Court has diversity jurisdiction of this action under 28 U.S.C. section 1332.  (Am. Pet. ¶¶ 10-15.)  BSG NY then filed a case against Respondents in New York state court and moved to vacate the arbitral award on grounds nearly identical to Petitioners'.  (See docket entry no. 36-1.) In a joint status report submitted to the Court, Petitioners admitted that BSG NY "was a party to the initial Petition; but was severed by the submission of the Amended Petition . . . in order to preserve diversity amongst the parties."  (Docket entry no. 43 ("Status Report") at 3.)  There is no dispute that, for diversity purposes, BSG NY is a citizen of New York, as are three of the four Respondents (Roy Stoller; R. Stoller DO, PLLC; and Louis J. Mariotti, DO, PLLC).  (See Stipulation at 2; Arbitration Award at 3.)

After Petitioners terminated BSG NY as a party to this action, Respondents filed their Second Motion to Dismiss, arguing that BSG NY was an indispensable party.  (See docket entry no. 37 at 7-8.)  Shortly thereafter, Respondents "agreed to withdraw said motion and add [BSG NY] as a compulsory counterclaimant."  (Docket entry no. 47 at 9.)  The parties also stipulated to stay the state court proceedings that BSG NY had initiated.  (Status Report at 3.)  By the Letter Motion and the proposed joint Stipulation, the parties now request that the Court (1) confirm BSG NY's joinder to this case as a "third-party respondent"; (2) permit BSG NY to participate in existing motion practice between the parties, including by allowing BSG NY to join "as a party to Petitioner's[sic] motion to vacate"; and (3) find that the requirements for subject matter jurisdiction are satisfied.  (Status Report at 2-3; Stipulation at 2; Ltr. Mot. at 1-2.)

## II.    DISCUSSION

A.    Motion to Seal

Petitioners move to file under seal five exhibits that are attached to their Motion to Vacate, arguing that the exhibits consist "exclusively and entirely of medical records" that cannot be filed with redactions.  (Mot. Seal at 1 (discussing docket entry nos. 18-7 ("Exhibit 7(a)"), 18-8 ("Exhibit 7(b)"), 18-16 ("Exhibit 15"), 18-17 ("Exhibit 16"), 18-18 ("Exhibit 17")).)[4]  Petitioners further seek to redact "patient names, contact information, and communications from all other exhibits."  (Id.)

There is a strong presumption of public access to judicial documents, a category which includes petitions to vacate arbitration awards and their supporting documents.  See W.J.

---

[4]    The Motion to Seal also requests leave to file Exhibit 18 (docket entry no. 18-19 ("Exhibit 18")) under seal.  This request appears to have been made in error, as Petitioners did not file Exhibit 18 under seal.  Rather, they filed it with a single redaction of the patient-affirmant's cell phone number.  That redaction was appropriate.

Deutsch & Sons Ltd. v. Diego Zamora, S.A., No. 21-CV-11003-LTS, 2022 WL 890184, at *2 (S.D.N.Y. Mar. 25, 2022).  Courts therefore may permit a party to file documents under seal or redact portions of their content only if the party overcomes that strong presumption, and even then, sealing and redactions must be "narrowly tailored."  See id.; Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 124 (2d Cir. 2006).  That said, "courts in this circuit regularly allow medical records to be filed under seal" given the "strong privacy interest" patients have in keeping their medical information private.  See Spring v. Allegany-Limestone Cent. Sch. Dist., No. 14-CV-476-WMS, 2021 WL 4166628, at *1 (W.D.N.Y. Sept. 14, 2021) (collecting cases).[5]

The exhibits Petitioners wish to redact and maintain under seal implicate strong privacy interests.  Exhibit 7(a) contains a list of patient names and contact information, and Exhibit 7(b) contains the contents of a medical calendar database containing patient names, contact information, and details of medical appointments.  Exhibits 15, 16, and 17 contain communications between physicians and patients.  Because these five exhibits consist almost entirely of personally identifiable information, medical records, and statements regarding diagnosis and treatment, they implicate "strong privacy interest[s]" that outweigh the presumption of public access, and Petitioners' sealing request is granted.  See Spring, 2021 WL 4166628, at *1.  For similar reasons, Petitioners appropriately redacted patient names, contact information, and medical information in their other exhibits, and their request to file those remaining exhibits with limited redactions is granted.

---

[5]     This principle is consistent with this Court's Individual Practice Rules, which provide that medical records and documents regarding treatment and diagnosis constitute "information that should be treated with caution and may warrant a motion for approval of sealed or redacted filing."  C.J. Swain Indiv. Prac. R. 5(b)(i).

B.        Petitioners' Stipulation and Letter Motion to Amend the Case Caption

After Petitioners dropped BSG NY from this action, the parties requested that the Court "So Order" a Stipulation reciting that the jurisdictional requirements are satisfied in this case and further providing that Respondents may, "pursuant to Federal Rule of [sic] Procedure 13(h), . . . assert a compulsory counterclaim to confirm the same final arbitral award that Petitioners have moved to vacate." (Stipulation at 1.)  The parties also ask the Court to "[c]onfirm [BSG NY] as a party to Petitioner's[sic] motion to vacate." (Ltr. Mot. at 1-2).  The Court must decide whether the party and claims joinder the existing parties seek in their Stipulation and Letter Motion are procedurally proper.  They are not.

The parties request that the Court permit Respondents to join BSG NY under Rule 13(h) for purposes of bringing compulsory counterclaim against BSG NY for confirmation of the arbitration award.[6]  Rule 13(h) provides that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."  The parties support their request by citing the Second Circuit's decision in Associated Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121 (2d Cir. 1990).  Like Petitioners here, the plaintiff in Associated Dry Goods invoked 28 U.S.C. section 1332, which requires complete diversity between the plaintiffs and the defendants, as the basis for subject matter jurisdiction.  920 F.2d at 1122.  At issue was whether the defendant could

---

[6]    The Stipulation further proposes to "implead [BSG NY] as a third-party respondent" (Stipulation at 1), which appears to be a request for leave to implead a third party under Rule 14.  Impleader is obviously inappropriate here because Rule 14 "requires that the third-party defendant's liability be derivative of or secondary to that of the defendant in the main action."  Gabriel Cap., L.P. v. Natwest Fin., Inc., 137 F. Supp. 2d 251, 258 (S.D.N.Y. 2000).  Nothing here suggests that Respondents would be able to "pass on" to BSG NY "all or part of the liability" that Petitioners assert against Respondents.  See Bank of India v. Trendi Sportswear, Inc., 239 F.3d 428, 438 (2d Cir. 2000) (citation omitted).  The Court therefore declines to "So Order" this aspect of the Stipulation and denies this portion of the Letter Motion.

BSG – RULE 19                          MARCH 25, 2026                          7

bring a Rule 13(h) compulsory counterclaim against a non-party who was a citizen of the same state as the defendant, or whether such a claim would destroy complete diversity and divest the court of subject matter jurisdiction.  Id. at 1126.  The Second Circuit held that because an independent basis for jurisdiction existed under 28 U.S.C. section 1332 for the plaintiff's affirmative claims, the district court was not barred from exercising supplemental jurisdiction over the defendant's Rule 13(h) compulsory counterclaim against the non-diverse new party.  Id.  The district court thus could join the new party as a Rule 19 plaintiff to defend against the defendant's counterclaims without destroying subject matter jurisdiction.

While Associated Dry Goods bears some resemblance to the instant case, it does not provide the procedural and jurisdictional solution that the parties desire.  The material difference between Associated Dry Goods and the instant case is that BSG NY seeks to join this case as a Rule 19 plaintiff not only to defend a Rule 13(h) counterclaim, but also to advance against Respondents its own claim for vacatur of the arbitration award.  This difference is critical, as the plain text of 28 U.S.C. section 1367(b) makes clear that supplemental jurisdiction is unavailable for BSG NY's affirmative claims against Respondents.  See 28 U.S.C. § 1367(b) (providing, inter alia, that "[i]n any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction . . . over claims by persons proposed to be made parties under Rule 19" when such exercise "would be inconsistent with the jurisdictional requirements of section 1332"); see also Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 727 (2d Cir. 2000) (explaining that section 1367 precludes supplemental jurisdiction of claims by plaintiffs joined under Rule 19 when their joinder is inconsistent with the requirements of diversity jurisdiction).

Nor would any other jurisdictional provision allow the Court to adjudicate a claim for vacatur brought by BSG NY against Respondents.  Diversity jurisdiction is unavailable because BSG NY would have to join this case as a plaintiff,[7] and it is a citizen of the same state as three Respondents.  And federal question jurisdiction is unavailable under Badgerow, 596 U.S. at 1, which precludes reliance on federal claims that were the subject of an arbitration for federal question jurisdiction of a petition to vacate the arbitral award.  In short, there is no jurisdictional basis that would allow the Court to adjudicate claims or counterclaims brought by BSG NY against Respondents, including the Motion to Vacate.

Because the Court cannot exercise jurisdiction over BSG NY's claim for vacatur of the arbitration award, the Court must determine whether this case can even move forward if BSG NY cannot bring that claim.  In other words, the Court must ascertain whether BSG NY is a necessary and indispensable party to the Motion to Vacate whose nonjoinder necessitates dismissal of the case under Rule 19.[8]  The Rule 19 analysis proceeds in two stages.  First, the

---

[7]     This is so because, when joining parties to a case for purposes of determining diversity of citizenship, this Court is required to align parties according to their "real interests so as to produce an actual collision of interests."  Lewis v. Odell, 503 F.2d 445, 447 (2d Cir. 1974); see also City of Indianapolis v. Chase Nat. Bank of City of New York, 314 U.S. 63, 69-70 (1941).  As explained above, BSG NY's interests align with those of its co-claimants in the underlying arbitration proceedings, and they clash with Respondents' interests.  BSG NY also cannot join this case as a Rule 14 third party, as explained above, nor is there any indication that it could intervene under Rule 24.

[8]     Although Respondents seek to withdraw their Motion to Dismiss to the extent it asserts that BSG NY is an unnamed indispensable party, the operative Answer in this case, filed after that withdrawal, asserts as an affirmative defense Petitioners' failure to name BSG NY as an indispensable party.  (Answer at 3.)  Regardless, it is well settled that the Court may consider this issue sua sponte.  MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 382-83 (2d Cir. 2006) (collecting cases).

court must determine whether an absent party is "necessary" under Rule 19(a). <u>Viacom</u>, 212

F.3d at 724. A party is necessary where:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

Here, the Court has no difficulty concluding that BSG NY is a necessary party

under Rule 19 because the Court cannot accord complete relief among existing parties in BSG

NY's absence. BSG NY is a named party to the arbitration award; it is the sole counterparty to

the arbitration agreements with Respondents (<u>see</u> Mariotti Agreement, Stoller Agreement); and it

is uncontested that Respondents only ever contracted with and provided services for BSG NY

and never had a contractual relationship with Petitioners (Arbitration Award at 3; <u>see</u> <u>also</u> Am.

Pet. ¶ 2). The Arbitration Award adjudicated contractual rights that belong to BSG NY alone, so

the Court cannot properly ascertain the validity of the Arbitration Award, nor grant or deny

Petitioners' requested relief, without affecting BSG NY's rights. This makes BSG NY a

necessary party to the Motion to Vacate the Arbitration Award. See <u>Ryan v. Volpone Stamp</u>

Co., 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) ("It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party." (collecting cases)).[9]

Because BSG NY is a necessary party to Petitioners' Motion to Vacate, it must be joined if feasible. Fed. R. Civ. P. 19(a). As explained above, however, BSG NY cannot be joined to the Motion to Vacate for jurisdictional reasons. This brings the Court to the second prong of the Rule 19 analysis: determining whether BSG NY is an indispensable party whose absence requires dismissal of the case. Viacom, 212 F.3d at 725. "Rule 19(b) sets forth four considerations that will ordinarily be among those relevant to the analysis of whether a party is 'indispensable.'" Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 133 (2d Cir. 2013). Those factors are: "(1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit." Id. (internal quotation omitted). If an absent party is indispensable, "then the Court must dismiss the action pursuant to Rule 19(b)." Viacom, 212 F.3d at 725. Here, all four indispensability factors favor dismissal.

With respect to the first and second indispensability factors, a judgment rendered in BSG NY's absence would result in prejudice to BSG NY and Respondents that cannot be alleviated. See Fed. R. Civ. P. 19(b)(1), (2). Among other things, that prejudice would take the

---

[9]    For similar reasons, BSG NY is a necessary party under Rule 19(a)(2) as well. Adjudicating this case in BSG NY's absence would impair BSG NY's ability to protect its own contractual interests under the Mariotti and Stoller Agreements, as well as its interest in seeking to invalidate and vacate the Arbitration Award. And, as evidenced by the parallel state court proceedings BSG NY has already initiated, Respondents would be subjected to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" if this Court were to determine the validity of the Arbitration Award without BSG NY. Fed. R. Civ. P. 19(a)(2)(ii).

form of being subjected to "multiple litigation" or potentially "inconsistent relief." See Provident Tradesmens Bank & Tr. Co. v. Patterson, 390 U.S. 102, 110 (1968). BSG NY has already filed a state court action that is nearly identical to this one. (Compare docket entry no. 36-1, with Am. Pet.) Respondents thus risk facing either "multiple potentially inconsistent verdicts," see Weber v. King, 110 F. Supp. 2d 124, 130 (E.D.N.Y. 2000), or collateral estoppel in one of the parallel cases, Glob. Gold Min., LLC v. Ayvazian, 612 F. App'x 11, 13 (2d Cir. 2015). And BSG NY faces the risk of conflicting determinations regarding its rights and the propriety of Respondents' actions under the Mariotti and Stoller Agreements,[10] as well as the validity of the Arbitration Award. There is no way for the Court to shape its relief to ameliorate these potential prejudices.

For largely the same reasons, the third indispensability factor also strongly favors dismissal. See Fed. R. Civ. P. 19(b)(3). "[A]dequacy refers to the public stake in settling disputes 'by wholes, whenever possible.'" Republic of Philippines v. Pimentel, 553 U.S. 851, 870 (2008) (citation omitted). This factor pertains to the "social interest in the efficient administration of justice and the avoidance of multiple litigation." CP Sols. PTE, Ltd. v. Gen. Elec. Co., 553 F.3d 156, 160 (2d Cir. 2009) (citation modified). Here, the contested Arbitration

---

[10]    That is so because the Motion to Vacate is based, in part, on arguments regarding the scope of BSG NY and Respondents' contractual relationships. Petitioners seek vacatur in an attempt to vitiate the Arbitration Award's conclusion that Respondents acted within the scope of their professional relationship with BSG NY—which the Mariotti and Stoller Agreements established—when they used the list of patient names. (Arbitration Award at 6; docket entry no. 20 at 2.) Because "this Court cannot ignore the fact that [BSG NY] is a separate legal entity" from Petitioners, see, e.g., Rubler v. Unum Provident Corp., No. 04-CV-7102-DC, 2007 WL 188024, at *3 (S.D.N.Y. Jan. 25, 2007); Hovensa, L.L.C. v. Technip Italy S.P.A., No. 08-CV-122-NRB, 2009 WL 690993, at *3-4 (S.D.N.Y. Mar. 16, 2009), Petitioners' Motion to Vacate would "rais[e] claims that properly belong" to BSG NY, Mazzio v. Kane, No. 14-CV-616-ARR-MDG, 2014 WL 2866040, at *4 (E.D.N.Y. June 24, 2014). This, too, is a form of prejudice that cannot be mitigated. Id.

Award assessed the claims of the three co-claimants (Petitioners and BSG NY) together, as opposed to evaluating each co-claimant's claims separately. It is neither judicially efficient nor even possible to disentangle BSG NY's underlying claims and rights in the Arbitration Award from Petitioners'. And piecemeal litigation is not merely a possibility if this case proceeds without BSG NY; it is currently unfolding, as explained above. It would neither serve judicial economy, nor further the "public interest in settling the dispute as a whole," to simultaneously litigate the same legal and factual issues in two separate forums, particularly because BSG NY "would not be bound by the judgment" rendered in its absence. Pimentel, 553 U.S. at 870-71.

Finally, the fourth indispensability factor supports dismissal. See Fed. R. Civ. P. 19(b)(4). Petitioners and BSG NY clearly should pursue vacatur of the Arbitration Award in one suit, but federal courts lack subject matter jurisdiction of any such suit. Petitioners and BSG NY face no comparable limitation on their ability to jointly pursue their claims in state court, where their remedy would be entirely adequate and where BSG NY's nearly identical lawsuit is already unfolding.

In sum, BSG NY is a necessary party to the Motion to Vacate under Rule 19(a), but the Court has no jurisdictional basis to entertain its claims against Respondents. Because BSG NY is indispensable under Rule 19(b) to that Motion to Vacate, as well as to the counterclaim for confirmation (which can be asserted in state court), equity and good conscience demand the dismissal of this action.

### III.  CONCLUSION

Petitioners' Motion to Seal is granted. The Letter Motion is denied, and the Court declines to "So Order" the parties' proposed Stipulation. Because BSG NY is a necessary and indispensable party that cannot be joined to Petitioners' Motion to Vacate, this case is dismissed

without prejudice to litigation in an appropriate state forum.  All of the pending motions are

therefore denied without prejudice, and the Clerk of Court is respectfully directed to enter

judgment accordingly and close this case.  This Memorandum Order resolves docket entry

nos. 16, 24, 28, 36, 38, 46, and 49.


SO ORDERED.
Dated: New York, New York
     March 25, 2026


                                 /s/ Laura Taylor Swain
                                 LAURA TAYLOR SWAIN
                                 Chief United States District Judge